USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                  :

In re: JEFFREY LEW LIDDLE      :

                                  :
------------------------------------x

19-cv-10279 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

The question presented in this bankruptcy appeal is whether Counsel Financial II ("CFII"), a creditor to Jeffrey Lew Liddle, had a perfected security interest in the proceeds from the sale of Liddle's Fifth Avenue apartment, funds which the debtor had placed in escrow with his attorney before filing for bankruptcy. For the following reasons, the Court finds that CFII did not have such an interest. The judgment of the bankruptcy court is accordingly affirmed.

**BACKGROUND**

The relevant facts are undisputed. In 2016, Liddle caused his law firm, Liddle & Robinson ("L&R"), to borrow about $5.6 million from CFII. Liddle and three of his law partners personally guaranteed the loan. Br. by Appellant in Supp. of Its Perfected Security Interest In and Lien Upon Cash Collateral, Dkt. 7 (Dec. 13, 2019).[1] In August of that year, Liddle and L&R signed a security agreement granting CFII a security interest in

---

[1] "Dkt." refers to the district court docket for this bankruptcy appeal, In re Jeffrey Lew Liddle, No. 19-cv-10279 (JSR) (S.D.N.Y.).

1

"collateral" consisting of "[a]ll of each Debtor's right, title and interest in all Goods (including Equipment, Fixtures and Inventory), Money, Instruments (including Promissory notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property . . . and any other personal property . . . ." Mem. of Decision at 2-3, Bankr. Dkt. No. 170 (Sept. 6, 2019) (hereinafter "Mem.").[2] CFII perfected this security interest by filing a U.C.C. financing statement. Ex. E to Letter of David Wander, Bankr. Dkt. 55-5 (Apr. 22, 2019).

Approximately two years later, L&R defaulted on its obligation to CFII. Mem. at 3. In September 2018, CFII sued L&R, Liddle, and the other guarantors to recover the debt, filing a motion for summary judgment in lieu of complaint in New York state court. Id.

While the state case was pending, CFII became aware that Liddle was planning to sell a Fifth Avenue apartment that he co-owned with his wife, Tara Liddle. Id. CFII accordingly moved the state court for a temporary restraining order ("TRO") and an order of attachment to prevent Liddle from spending the proceeds of this contemplated sale. Id. On January 14, 2019, the state court granted a TRO that required Liddle to hold the sale

---

[2] "Bankr. Dkt." refers to the bankruptcy court docket for the underlying Chapter 11 action, In re Jeffrey Lew Liddle, No. 19-10747 (SHL) (Bankr. S.D.N.Y.).

2

proceeds in escrow and that prohibited "Liddle, his designees, and/or any person or entity acting on his behalf . . . from transferring, dissipating, or otherwise disposing of any proceeds of any sales" of the Fifth Avenue property, pending decision on the motion for summary judgment and the motion for an order of attachment. Id.; Second Amended Order to Show Cause at 2, Ex. P to Letter of David Wander, Bankr. Dkt. 55-16 (hereinafter "TRO").[3] The TRO also required CFII to post a $500,000 bond to cover damages incurred by Liddle in the event the court did not rule in CFII's favor on the merits. TRO at 1-2.

On February 4, 2019, the state court entered a stipulation and order (the "Stipulation") that modified the TRO in two material respects. Ex. Q to Letter of David Wander, Bankr. Dkt. 55-17. First, "[i]n order to facilitate the closing of the sale" of the Fifth Avenue apartment, the Stipulation authorized Liddle to make eleven specified payments out of the sale proceeds to parties involved in the transaction (including the broker, the mortgage lender, etc.). Id. ¶ 2. Second, the Stipulation directed Diane C. Nardone, Esq., "the closing attorney for Liddle and Tara Liddle on the sale of the Apartment," rather than Liddle himself, to hold the remaining proceeds in escrow

---

[3] The TRO also applied the same requirements to the contemplated sale of another real property not here relevant. TRO at 2.

3

"in her Attorney IOLA Account, subject to the TRO pending the hearing and determination of Plaintiff's motion for an order of attachment and a further order of this Court disposing of that motion for an order of attachment." Id. ¶ 3. The Stipulation also ordered Nardone to notify CFII of the anticipated closing date of the apartment sale and, upon closing, to notify CFII of the amount of proceeds held in escrow and to provide proof that the eleven authorized payments had been made. Id. ¶¶ 4-5.

The state court ultimately ruled in CFII's favor on the merits of the underlying action. On March 5, 2019, the court granted CFII's motion for summary judgment, and on March 7, the court entered an order of attachment directing Nardone to deposit the escrowed funds with the registry of the court. Mem. at 4; Exs. C & D to Letter of David Wander, Bankr. Dkts. 114-4 & 114-5 (July 1, 2019).

At this point, CFII would ordinarily have perfected its security interest in the sale proceeds by serving the order of attachment on the relevant county sheriff. See C.P.L.R. § 6203. Before CFII did so, however, Liddle filed for Chapter 11 protection. Mem. at 4-5. Accordingly, Nardone's obligation to deliver the sale proceeds to the court registry was automatically stayed under 11 U.S.C. § 362(a). Instead, shortly after Liddle's filing, the bankruptcy court ordered Nardone to turn over the sale proceeds from her attorney IOLA account to

4

Liddle's debtor-in-possession account. Bankr. Dkt. 27 (Apr. 1, 2019).

Liddle then filed a motion before the bankruptcy court for use of the cash collateral, a motion which, in effect, would allow Liddle to spend the proceeds of the apartment sale. Bankr. Dkt. 37 (Apr. 8, 2019). CFII objected on the ground that it had a perfected security interest in the funds. Bankr. Dkt. 47 (Apr. 10, 2019). In September 2019, the bankruptcy court entered an order denying CFII's claim of a perfected security interest and granting Liddle's cash collateral motion. Bankr. Dkt. 185 (Sept. 26, 2019); Mem. at 1-2. CFII now appeals from this decision.

**DISCUSSION**

The only issue on appeal is whether CFII had a perfected security interest in the sale proceeds from Liddle's apartment. Because this is a mixed question of law and fact, this Court reviews the bankruptcy court's analysis de novo. In re Republic Airways Holdings Inc., 582 B.R. 278, 281 (S.D.N.Y. 2018).

New York's Uniform Commercial Code allows a secured party to perfect its security interest in money by taking possession of it. N.Y. U.C.C. § 9-313. The rationale for this provision, which is derived from the common law, is that "the debtor's lack of possession coupled with actual possession by the creditor [or] the creditor's agent . . . serves to provide notice to prospective third party creditors that the debtor no longer has

5

unfettered use of [its] collateral." Hassett v. Blue Cross & Blue Shield of Greater N.Y. (In re O.P.M. Leasing Servs., Inc.), 46 B.R. 661, 670 (Bankr. S.D.N.Y 1985) (internal quotation marks omitted); see also In re Singer Prod. Co., 102 B.R. 912, 925 (Bankr. E.D.N.Y. 1989).

Here, CFII argues that it perfected its security interest in the sale proceeds as soon as Nardone deposited the funds into the escrow account. This is because, in CFII's view, the escrow arrangement was tantamount to possession of the funds by CFII itself, thereby accomplishing perfection under section 9-313 of New York's Uniform Commercial Code.[4] Specifically, CFII argues that it had possession of the escrowed funds either because Nardone was acting as CFII's agent, N.Y. U.C.C. § 9-313(a), or, alternatively, because Nardone took possession of the funds "after having authenticated a record acknowledging that [she would] hold possession of the collateral for [CFII's] benefit," Id. § 9-313(c)(2). The Court finds both arguments unpersuasive.

I. **Nardone Was Not Acting as CFII's Agent.**

CFII first argues that it possessed the escrowed funds via Nardone, who was acting as the agent of both Liddle and CFII.

---

[4] Importantly, this rationale does not rely at all on the March 7, 2019 order of attachment, and CFII apparently concedes that its failure to serve this order before Liddle's bankruptcy filing foreclosed that method of perfection.

6

A secured party perfects an interest in money by possessing it. N.Y. U.C.C. § 9-313(a). But the possessor need not be the secured creditor itself; possession by an agent of the creditor generally also suffices. Id. Cmt. 3; see also N.Y. U.C.C. § 1-103(b) (providing that ordinary legal principles, including the law of principal and agent, apply unless explicitly displaced). Accordingly, if Nardone had held the sale proceeds in escrow as CFII's agent, then CFII would have had a perfected security interest in the funds.

The question, then, is whether Nardone was in fact CFII's agent. A principal-agent relationship arises "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. Here, there is no dispute that Nardone was Liddle's agent, as she was his lawyer. This fact does not necessarily preclude a finding that Nardone was also CFII's agent, though courts are hesitant to conclude that a party was acting as a "dual agent" on behalf of two adverse parties. See Sotheby's Int'l Realty, Inc. v. Black, 06-cv-1725 (GEL), 2007 WL 4438145, at *2 (S.D.N.Y. Dec. 17, 2007) ("[P]roof of consent by a principal to dual agency must be exacting.") (internal quotation marks omitted).

7

But here, the facts are not nearly sufficient to support a finding that Nardone was CFII's agent. Nothing in the Stipulation — the only document that creates any kind of relationship between Nardone and CFII — manifests Nardone's assent to act under CFII's control. See 1A Secured Transactions Under the U.C.C. § 6A.04[1][b] ("[T]here must be some mutual assent between the parties to create an agency relationship."). Rather, the Stipulation required Nardone to take only limited, specific actions with respect to CFII: (1) to notify CFII of the closing of the apartment sale and the amount of proceeds resulting therefrom, (2) to hold these proceeds, less the eleven authorized payments, in escrow in her attorney IOLA account, and (3) to provide proof that the eleven authorized payments had been made. Stipulation ¶¶ 3-5.

Moreover, the broader circumstances suggest that Nardone was essentially stepping into Liddle's shoes to hold the funds in escrow as his agent and on his behalf. The state court originally required Liddle himself to hold the funds in escrow. TRO at 2. The Stipulation, which incorporated the TRO by reference, ¶ 1, modified the TRO to allow Nardone, rather than Liddle, to serve as escrow agent. But the language of the Stipulation strongly implies that Nardone's involvement in the arrangement was intended to be the functional equivalent of Liddle personally holding the funds in escrow. Specifically,

8

paragraph 3 of the Stipulation describes Nardone as "the closing attorney for Liddle and Tarra Liddle on the sale of the Apartment," and Nardone's signature block at the bottom of the Stipulation identifies her as "Escrow Agent for Jeffrey Liddle and Tara Liddle."

Accordingly, the placement of the sale proceeds in an escrow account controlled by Nardone would not have fulfilled the notice function that provides the rationale for § 9-313(a). That is, Nardone's possession of the funds would not have placed other potential creditors on notice that CFII had an interest in the sale proceeds. To an outsider, the placement of the funds into the IOLA account of Liddle's counsel would have appeared substantially the same as the debtor himself holding the funds in escrow.[5]

---

[5] For similar reasons, CFII might not have perfected its security interest under section 9-313(a) through Nardone's possession even if Nardone had been the dual agent of both Liddle and CFII. An exception to the general rule of § 9-313(a) is that the debtor cannot qualify as the secured creditor's agent for purposes of perfection by possession. § 9-313 Cmt. 3. And although possession by a dual agent of the creditor and debtor "is not of itself inconsistent with the secured party's having taken possession, . . . under appropriate circumstances, a court may determine that a person in possession is so closely connected to or controlled by the debtor that the debtor has retained effective possession, even though the person may have agreed to take possession on behalf of the secured party." Id. Had the Court reached this question, that language might have been applicable here.

9

CFII advances a few responses, but none is persuasive. CFII first argues that the Court would improperly elevate form over substance by examining facts like Nardone's title in the signature block of the Stipulation as evidence of the scope of her relationship with CFII. See In re Ames Dep't Stores, Inc., 144 Fed. App'x 900, 901 (2d Cir. 2005) ("[W]here, as here, 'the relative rights of a bankrupt's creditors are at issue, it is particularly important that substance not give way to form.'") (quoting Pan Am. World Airways, Inc. v. Shulman Transport Enters., Inc. (In re Schulman Transp. Enters., Inc.), 744 F.2d 293, 295 (2d Cir. 1984)). But in this case, the substance is consistent with the form. All the facts noted above, not only Nardone's signature block title, indicate that Nardone was acting as Liddle's agent, and not CFII's.

Next, CFII cites Providence, SC. Bank R.I. v. Mixitforme, Inc., No. PM 06-1626, 2007 WL 299361 (R.I. Super. Ct. Jan. 11, 2007), a case in which a Rhode Island court held that a secured creditor had perfected its security interest in escrowed funds through possession via an agent.[6] CFII argues that Mixitforme provides persuasive authority for the proposition that CFII likewise had perfected its security interest. But Mixitforme is

---

[6] The relevant section of Rhode Island's perfection-by-possession statute is identical to New York's. See R.I. Gen. Laws. § 6A-9-313(a).

10

distinguishable. There, the escrowed funds were held in a court registry, and the opinion explains that the court was "the equivalent of an 'agent' of [the secured creditor] for purposes of determining possession." Id. In the instant case, the escrow agent was not the court, but the debtor's lawyer: in other words, not a third party, but a party closely related to the debtor. Indeed, Mixitforme anticipates this distinction, acknowledging that "a person may be so closely connected with a debtor, such as the debtor's attorney, that the secured party cannot be deemed to have possession." Id.; see R.I. Gen. Laws. § 6A-9-313(a) Cmt. 3. Consequently, Mixitforme does not support the finding of an agency relationship between Nardone and CFII.[7]

---

[7] Neither does the other case on which CFII primarily relies, Hassett v. Blue Cross and Blue Shield of Greater N.Y. (In re O.P.M. Leasing Servs., Inc., 46 B.R. 661 (Bankr. S.D.N.Y. 1985). The relevant facts of Hassett are close to those of the instant case: there, as here, a secured creditor argued that it had perfected by possession a security interest in escrowed funds held by the debtor's lawyer. But although the Hassett court held that the secured creditor had perfected its security interest, that court came to its conclusion under an earlier version of the perfection-by-possession statute, in force until 2001, which allowed perfection upon possession by a third-party bailee with notice of the creditor's claim. This was a lower standard than that of the current statute, which requires possession by an agent of the creditor. See 1A Secured Transactions Under the U.C.C. § 6A.04[1][b] ("Possession through an agent is a path distinct from possession through a bailee-with-notice (old Section 9-305) . . . ."). For this reason, Hassett is inapposite.

## II. Nardone Did Not "Authenticate a Record" Acknowledging that She Held Possession of the Collateral for CFII's Benefit.

CFII next argues that it perfected its security interest in the escrowed funds pursuant to section 9-313(c)(2) of New York's Uniform Commercial Code, which provides that "a secured party takes possession of collateral in the possession of a person other than the debtor . . . when: . . . the person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession of collateral for the secured party's benefit." This is an easier standard to satisfy than that of section 9-313(a), because section 9-313(c)(2) does not require an agency relationship between the secured creditor and the possessor of the collateral.

But even assuming arguendo that the Stipulation was a "record" and that Nardone's signature was an "authentication,"[8] the Court holds that the requirements of section 9-313(c)(2) are not here satisfied. The statute does not simply require that the escrow agent act for the secured party's benefit, but that the escrow agent authenticate a record acknowledging that she will do so. See § 9-313 Cmt. 4 ("Notification of a third person does

---

[8] See N.Y. U.C.C. § 9-102(a) (definitions of "authenticate" and "record").

12

not suffice to perfect under Section 9-313(c). Rather, perfection does not occur unless the third person authenticates an acknowledgment that it holds possession of the collateral for the secured party's benefit."). There is no language in the Stipulation — nor, for that matter, in the TRO — that demonstrates acknowledgment by Nardone that she was holding the escrowed funds for CFII's benefit.

Rather than pointing to specific language in the Stipulation, CFII relies on the general purpose of the escrow arrangement, which was to preserve the creditor's interest in the sale proceeds. To be sure, this is, in some sense, correct. The state court entered the TRO and Stipulation in order to benefit CFII by prohibiting Liddle from dissipating the sale proceeds. (The escrow arrangement certainly did not benefit Liddle, who would have preferred unfettered access to these funds.) Nardone's involvement in the escrow arrangement therefore was, in that limited sense, for the benefit of CFII. Moreover, as escrow agent, Nardone owed a fiduciary duty to CFII. See Takayama v. Schaefer, 240 A.D.2d 21, 25 (N.Y. App. Div. 1998) ("An escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust . . . .").

But this argument only goes so far. First, for all the reasons noted above, Nardone was Liddle's agent, and her

13

participation in the escrow arrangement is best viewed as the substantial equivalent of Liddle holding the funds himself. Moreover, as Liddle responds, the facts surrounding the Stipulation in particular indicate that it was not entered solely for CFII's benefit. Indeed, the Stipulation modified the earlier TRO in Liddle's favor, allowing the eleven payments to be made out of the sale proceeds for the purpose of "facilitate[ing] the closing of the sale of the Apartment." Stipulation ¶ 2. Accordingly, even if the Court were to look to the purpose and context of the Stipulation, rather than its language, those would not unambiguously support CFII's argument.

For these reasons, the Court cannot find that Nardone "authenticated a record acknowledging that [she] will hold possession of the collateral for [CFII's] benefit" without clear language to that effect. § 9-313(c)(2). But the Court notes that it may well have held otherwise if the Stipulation had included such wording.[9] The Court expressly rejects Liddle's contention that no escrow created by a TRO can ever constitute a transfer of possession for the purposes of section 9-313(c). Liddle argues that such an arrangement is simply a temporary remedy in

---

[9] As above, there might still have been a question about whether Nardone was so "dominated by the debtor" that she could not have constituted "a person other than the debtor" for the purposes of section 9-313(c). See 1A Secured Transactions Under the U.C.C. § 6A.04[3][d][i].

14

which "ownership is held in stasis" while a court adjudicates an action on the merits. 99 Commercial St., Inc. v. Goldberg, 811 F. Supp. 900, 906 (S.D.N.Y. 1993); see also J.A. Preston Corp. v. Fabrication Enters., 68 N.Y.2d 397, 402 (N.Y. 1986). But 99 Commercial Street does not compel Liddle's conclusion, as it describes escrowed assets as "available neither to grantor nor grantee," rather than owned unreservedly by the grantor. 811 F. Supp. at 906. And as a policy matter, a secured party in CFII's position should have the ability to negotiate for the inclusion of language that would protect its interest in escrowed collateral during the pendency of a motion for an order of attachment or the like. Liddle's reasoning, taken to its logical conclusion, would unfairly preclude this option.

In sum, the Court has examined the Stipulation for any language constituting an acknowledgement by Nardone that she "will hold possession of the collateral for [CFII's] benefit." Having found none, the Court holds that CFII did not perfect its security interest in the escrowed funds under section 9-313(c)(2).

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED.

Dated: New York, NY
       March 6, 2020

_____
JED S. RAKOFF, U.S.D.J.